UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT HENDERSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-1024 |
| | § | |
| BLACK ELK ENERGY OFFSHORE | § | |
| OPERATIONS, LLC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendant Black Elk Energy Offshore Operations, LLC ("Black Elk"). Dkt. 45. Having considered the motion, response, reply, objections, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

This case involves plaintiff Robert Henderson's alleged injuries sustained while on an offshore platform owned by Black Elk. Dkt. 19 at 3. Bagwell Energy Services, Inc. ("Bagwell") employed Henderson as a welder while working on the Black Elk platform, which was located on the Louisiana Outer Continental Shelf. *Id.* Bagwell and Black Elk entered into a Master Service Agreement ("MSA") to govern the rights and obligations of the parties with respect to the work on the platform. Dkt. 45-3 at 21–34.

The MSA provided:

> [Bagwell] shall be an independent contractor with respect to the performance of all Work hereunder and neither [Bagwell] nor anyone employed by [Bagwell] shall be deemed for any purpose to be the employee, agent, servant, or representative of BLACK ELK in the performance of any Work

> or any part thereof pursuant to this Agreement. BLACK ELK shall have no direction or control of the details of the Work, [Bagwell], or its employees and agents except in the results to be obtained. The actual performance and supervising of all Work hereunder shall be by [Bagwell], but BLACK ELK or its representatives shall have unlimited access to the premises to determine whether Work is being performed by [Bagwell] in accordance with all of the provisions of this Agreement. At BLACK ELK's discretion, the Work may be reviewed or tested by a BLACK ELK representative and be subject to his approval and acceptance.

*Id.* at 25. It further provided:

> [Bagwell] is responsible for initiating, maintaining, and supervising all necessary safety precautions and programs in connection with the Work. [Bagwell] shall take all necessary precautions for the safety of its employees, subcontractors, agents[,] and invitees at the work site.

*Id.* at 22.

While on the Black Elk platform, Henderson and other Bagwell employees attended safety meetings conducted by Black Elk company man, Terry Hale. Dkt. 54-1 at 3. At the safety meeting on August 19, 2014, Hale and a Bagwell supervisor agreed that certain items, including handrail pipe, needed to be moved from one side of the platform to the other. *Id.* at 4. They further agreed and indicated to the Bagwell employees that the materials should be manually moved. *Id.* While the evidence indicates that Hale wanted the materials moved manually, Henderson admits that Hale did not actually tell Bagwell employees how to do their job, but rather just made recommendations. *Id.* at 3.

Per the agreed upon procedures by Hale and the Bagwell supervisor, Henderson began moving materials across the platform. *Id.* at 7. On his second trip, Henderson carried two pieces of pipe up a flight of stairs. *Id.* While climbing the stairs, he sustained an injury to his back. *Id.* Henderson admits that Hale never told him to carry two pieces of pipe together. *Id.* As a result of the injury, Henderson sued Black Elk for negligence and gross negligence. Dkt. 19. Black Elk now

2

seeks summary judgment, arguing that it did not owe a duty to Henderson and thus cannot be liable for negligence. Dkt. 45.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## III. ANALYSIS

### A. Evidentiary Objections

Black Elk lodges several objections to the evidence attached to Henderson's response to the motion for summary judgment. Dkt. 58. The response included deposition testimony from Henderson and the expert report of Robert Borison. Dkts. 54-1, 54-2.

#### 1. *Henderson Deposition*

Black Elk objects to many excerpts of Henderson's deposition cited by Henderson in his response. Dkt. 58 at 3–4. Black Elk argues that the court should consider other portions of the attached deposition under the rule of optional completeness. *Id.* Because the court will consider all

3

of Henderson's admissible testimony attached to his response, Black Elk's objections regarding optional completeness are SUSTAINED.

More specifically, Black Elk objects to lines 33:8–33:24 of the deposition as speculation based on hearsay. The testimony has no mention of any out of court statement, so the objection is OVERRULED. Black Elk objects to lines 36:14–37:7 as hearsay and speculation based on hearsay. Lines 36:14–36:17 and 36:22–36:24 are statements from Hale and thus statements by a party opponent. Fed. R. Evid. 801(d)(2)(D) (statement made by a party's employee on a matter within the scope of his employment relationship while the relationship existed is not hearsay). However, the remainder of the excerpt contains statements from other Bagwell employees offered for the truth of the matter asserted and are hearsay. Fed. R. Evid. 801(c). Accordingly, Black Elk's objection is OVERRULED IN PART and SUSTAINED IN PART. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) (evidence based on hearsay should not be considered at summary judgment).

Black Elk objects to lines 37:8–38:16 as hearsay and speculation based on hearsay. Lines 38:3–38:16 regard Hale's statements and are thus statements by a party opponent. Fed. R. Evid. 801(d)(2)(D). The remainder of the excerpt contains statements from Henderson and other Bagwell employees offered for the truth of the matter asserted and are hearsay. Fed. R. Evid. 801(c). Black Elk's objection is OVERRULED IN PART and SUSTAINED IN PART. *Fowler*, 68 F.3d at 126.

Black Elk objects to lines 39:1–39:9 as hearsay and speculation based on hearsay. The alleged hearsay is a statement from Hale and is not hearsay. Fed. R. Evid. 801(d)(2)(D). Black Elk's objection is OVERRULED. Black Elk objects to lines 42:1–42:18 as hearsay and speculation based on hearsay. Henderson testified as to what another employee told him regarding conversations with Hale and a Bagwell supervisor. Thus, the statements are hearsay, and the objection is SUSTAINED. *Fowler*, 68 F.3d at 126. Black Elk objects to lines 45:7–46:19 as speculation based on hearsay. The

4

testimony has no mention of any out of court statement, so the objection is OVERRULED. Black Elk objects to lines 79:10–79:22 as hearsay and speculation based on hearsay. Lines 79:10–79:14 regard Hale's statements and are not hearsay. Fed. R. Evid. 801(d)(2)(D). However, the remainder of the excerpt provide the statements of other Bagwell employees and are offered to prove the matter asserted—that the employees were concerned about manually moving the equipment. Thus, Black Elk's objection is OVERRULED IN PART and SUSTAINED IN PART. *Fowler*, 68 F.3d at 126.

2. *Borison Report*

Black Elk objects to Borison's expert report because it is unauthenticated, unsworn, and unaccompanied by an affidavit. Dkt. 58 at 4. Black Elk also argues that Borison should be excluded as an expert. *Id.* In his summary judgment response, Henderson only relies on the factual recitation Borison provides in his report, not on any of Borison's opinions. *See* Dkt. 54. Thus, Henderson attempts to use Borison, at least for summary judgment purposes, as a fact witness rather than as an expert. Borison bases his factual findings on the complaint and a telephone call with Henderson. Dkt. 54-2 at 3–4. Given that Borison has no personal knowledge of the events that took place on the platform, his testimony, as a fact witness, would not be proper at trial. Fed. R. Evid. 602.

Further, to the extent that Henderson argues that he is using Borison as an expert witness for summary judgment purposes, Borison's relevant testimony would not be helpful to a jury. The relevant testimony attempts to summarize the events that took place based on Henderson's account of what happened and what is stated in the complaint. Dkt. 54-2 at 3–4. Borison is in no better position than a juror to summarize what took place on the platform according to Henderson's testimony, and thus the relevant portion of the report is inadmissible. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also* Fed. R. Evid. 702(a). Black Elk's objection is SUSTAINED.

**B.     Existence of a Duty**

Black Elk argues that summary judgment should be granted because it did not owe Henderson a duty. Dkt. 45 at 2. According to Black Elk, it is exempted from liability for the acts of its independent contractor, Bagwell. *Id.* at 4. It argues that it did not have a duty to provide a safe work place for employees of independent contractors. *Id.* at 7. Finally, Black Elk argues that Henderson's injury was caused by an open and obvious condition, relieving Black Elk of any duty to warn or remedy the condition. *Id.* at 8.

   *1.     Independent Contractor Analysis*

Black Elk's platform was located on the outer Continental Shelf off the Louisiana coast. *Id.* at 2; Dkt. 54 at 3. "The Outer Continental Shelf Lands Act . . . mandates that when disputes arise involving fixed structures erected on the outer Continental Shelf, applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations." *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911 (5th Cir. 1997). Thus, the parties agree that Louisiana law applies. Dkt. 54 at 3. Under Louisiana law, "a principal . . . cannot be liable for injuries resulting from the negligent acts of an independent contractor . . . unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Coulter*, 117 F.3d at 911–12. The parties agree that the ultrahazardous exception does not apply. Dkt. 54 at 9.

Testing for the operational control exception requires the court to first examine the extent that Bagwell contractually reserved the right to control the work. *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003). "[T]he relationship between the principal and

6

independent contractor is in large measure determined by the terms of the contract itself." *Ham v. Pennzoil Co.*, 869 F.2d 840, 842 (5th Cir. 1989). The MSA provided:

> [Bagwell] shall be an independent contractor with respect to the performance of all Work hereunder and neither [Bagwell] nor anyone employed by [Bagwell] shall be deemed for any purpose to be the employee, agent, servant, or representative of BLACK ELK in the performance of any Work or any part thereof pursuant to this Agreement. BLACK ELK shall have no direction or control of the details of the Work, [Bagwell], or its employees and agents except in the results to be obtained. The actual performance and supervising of all Work hereunder shall be by [Bagwell], but BLACK ELK or its representatives shall have unlimited access to the premises to determine whether Work is being performed by [Bagwell] in accordance with all of the provisions of this Agreement. At BLACK ELK's discretion, the Work may be reviewed or tested by a BLACK ELK representative and be subject to his approval and acceptance.

Dkt. 45-3 at 25. The MSA also provided:

> [Bagwell] is responsible for initiating, maintaining, and supervising all necessary safety precautions and programs in connection with the Work. [Bagwell] shall take all necessary precautions for the safety of its employees, subcontractors, agents[,] and invitees at the work site.

*Id.* at 22. When the contract expressly vests the independent contractor with responsibility for the injurious activities, the principal "cannot be liable for any injuries resulting therefrom absent some other unusual circumstance." *Coulter*, 117 F.3d at 912.

Next, the court must consider "if the principal [had] direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." *Fruge*, 337 F.3d at 564. Just like in *Fruge*, the independent contractor—Bagwell— was exclusively responsible for controlling the details of the work performed. The MSA specifically provided that Black Elk "shall have no direction or control of the details of the Work." Dkt. 45-3 at 26. Henderson argues that the summary judgment evidence shows that Black Elk exercised operational control through Hale. Dkt. 54 at 9. The court disagrees. The evidence shows that Hale

conducted safety meetings. Dkt. 54-1 at 3. However, holding safety meetings does not constitute operational control. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991). At these safety meetings, Hale and the Bagwell supervisor agreed that the Bagwell employees should move the pipes by hand. Dkt. 54-1 at 4–5. However, Henderson points to no evidence that Hale did anything more than recommend a safety plan that was followed by the Bagwell supervisor. Making a suggestion or recommendation that need not be followed does not constitute operational control. *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989) (quoting Restatement (Second) of Torts § 414 cmt. c). Henderson admits that Hale did not "actually tell [Bagwell employees] how to do [their] job, but in the safety meeting, [he] would recommend that [they] be safe." Dkt. 54-1 at 3.

Henderson's argument, then, seems to be that because Bagwell employees followed Hale's recommendations, Hale exercised operational control. However, the inquiry is not whether Hale's suggestions and recommendations were actually followed, but rather if they had to be followed. *Landry*, 889 F.2d at 1471. By Henderson's own testimony, they were not orders but recommendations. *See* Dkt. 54-1 at 3. And under the terms of the contract, Hale had no power to control the work other than approving the results. Dkt. 45-3 at 25.

Further, even if Hale did give instructions to Bagwell employees, those instructions do not amount to operational control. In *Landry*, the company man told the plaintiff to "pick up [the] tongs," which led to his injury. 889 F.2d at 1471. However, the company man never told the plaintiff "how to rig, counterbalance, raise[,] or lower the tongs." *Id.* at 1472. Thus, the Fifth Circuit held that the company man did not tell the plaintiff how to do his job. *Id.* Similarly, Henderson points to no evidence that Hale instructed Bagwell employees on how to lift, carry, or transport the

8

pipes, other than to do it manually.[1] Like in *Landry*, Black Elk retained the right to inspect the work conducted by Bagwell. Even if Hale exercised that right, *Landry* controls, and Hale's instructions did not amount to operational control.

### 2. *Duty to Provide a Safe Place to Work*

Black Elk argues that it did not owe Henderson a duty to provide a safe place to work. Dkt. 45 at 7. Henderson maintains that premises owners owe a duty to exercise reasonable care for the safety of the persons on its premises and a duty of not exposing such persons to unreasonable risks of injury or harm. Dkt. 54 at 13. Henderson argues "[t]his duty extends to employees of independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment." *Id.* at 13–14 (citing *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994)). However, *Dupre* conflicts with other Fifth Circuit precedent. *Dupre*, 20 F.3d at 158 (Jones, J., dissenting); *see, e.g.*, *Boutwell v. Chevron U.S.A., Inc.*, 864 F.2d 406 (5th Cir. 1989) (holding that Chevron had no duty when an independent contractor's employee fell through a hole in the platform that Chevron knew about).

In fact, just a month after *Dupre*, the Fifth Circuit held that a principal did not have a duty to provide a safe work place when the contract placed such duties on the independent contractor. *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994). In *Graham*, the court decided that the principal did not owe the plaintiff a duty for the acts of an independent contractor. *Id.* at 646–47. Then, *Graham* considered whether the principal had a duty to provide a safe work place. *Id.* at 647.

---

[1]Notably, Henderson admits that no Black Elk employee ever told him to carry two pipes together. Dkt. 54-1 at 7. As the Fifth Circuit has held, "absent an express or implied order to the contractor *to engage in an unsafe work practice leading to an injury*, a principal . . . cannot be liable under the operational control exception." *Coulter*, 117 F.3d at 912 (emphasis added). Henderson freely admits that Black Elk did not order him to engage in the act that led to his injury, further illustrating that Black Elk did not exercise operational control. Dkt. 54-1 at 7.

*Graham* held that the principal "did not have any duty whatsoever with respect to the working conditions or procedures of the [independent contractor employee] who was injured as he was supervised by another [independent contractor employee] while each were performing activities that the contract expressly delegated to [the independent contractor]." *Id.* Here, Henderson was injured while under the supervision of the Bagwell supervisor performing the work that Bagwell contractually agreed to be responsible for. Dkt. 45-3 at 25. Moreover, Bagwell expressly assumed the duty of "initiating, maintaining, and supervising all necessary safety precautions and programs in connection with the Work" and taking "all necessary precautions for the safety of its employees, subcontractors, agents[,] and invitees at the work site." *Id.* at 22. Thus, under *Graham* and the parties' agreement, Black Elk did not owe Henderson a duty to provide a safe work place.

Even if Black Elk did owe Henderson a duty to provide a safe work place, the risk that Henderson was exposed to—injury from carrying two pipes—does not relate to Black Elk's duty to "make and keep its platform safe for workers thereon." *Jordan v. Apache Corp.*, No. G–07–58, 2009 WL 10693404, at *6 (S.D. Tex. Mar. 2, 2009) (quoting *Dupre*, 20 F.3d at 158), *aff'd*, 332 F. App'x 992 (5th Cir. 2009). Henderson argues Black Elk breached its duty by requiring him to carry heavy equipment, not by providing an unsafe condition on the platform, "such as defective stairs or faulty equipment." *Id.* And as already established, Black Elk did not owe a duty for any actions taken by Hale or any other Black Elk employee on the platform. *See supra* Section III.B.1.

### 3. Open and Obvious Condition

Black Elk also argues that it owed no duty because the alleged danger of carrying heavy pipes is open and obvious. Dkt. 45 at 8. Henderson responds that Black Elk's breach of duty stems from Hale's instructions, not any physical condition of the property, and thus the open and obvious condition rule does not apply. Dkt. 54 at 14. The court agrees with Henderson insomuch as he

argues that the breach of duty stems from Hale's actions. Because the court has already determined that Hale's instructions did not amount to operational control, the court need not consider whether the open and obvious rule applies to alleviate that alleged duty. *See supra* Section III.B.1.

### IV. CONCLUSION

Black Elk's motion for summary judgment (Dkt. 45) is GRANTED. Because this order disposes of Henderson's remaining claims, all other pending motions are DENIED as moot. The court will enter a final judgment consistent with this order.

Signed at Houston, Texas on May 7, 2018.

_____
Gray H. Miller
United States District Judge